UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VIRGINIA RAMOS, )<br>)<br>        **Plaintiff,** )<br>)<br>        v. )<br>)<br>NANCY A. BERRYHILL, )<br>**Acting Commissioner of Social** )<br>**Security,** )<br>)<br>        **Defendant.** )<br>_____ ) | **Case No. CV 16–6747 AJW**<br><br>**MEMORANDUM OF DECISION** |

      Plaintiff seeks reversal of the decision of defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their respective contentions.

**Administrative Proceedings**

      The parties are familiar with the procedural facts. [See JS 2-3; Administrative Record ("AR") 23]. In a September 19, 2014 written hearing decision that constitutes the Commissioner's final decision, the Administrative Law Judge ("ALJ") concluded that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of medium work that did not preclude performance of her past relevant work as a home attendant. [AR 23-33]. Accordingly, the ALJ found plaintiff not disabled at any time from March 29, 2009, her alleged onset date, through the date of the ALJ's decision. [AR 32-33].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

Plaintiff contends that the ALJ erred in evaluating the severity of her impairments. [JS 14-21].

At step two of the five-step sequential evaluation procedure, the Commissioner must determine whether the claimant has a severe, medically determinable impairment or combination of impairments. See Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 140-141 (1987)). A medically determinable medical impairment is one that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908 (2016); 20 C.F.R. §§ 404.1528, 416.928 (2016); see Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1-*2.

The ALJ must determine whether a claimant's medically determinable impairment or combination of impairments significantly limits his or her physical or mental ability to do "basic work activities," which are "the abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) the use

of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521, 416.921 (2016). A medically determinable impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2006) (quoting Smolen, 80 F.3d at 1290). The severity regulation "identif[ies] at an early stage those claimants whose medical impairments are so slight that it is unlikely that they would be found to be disabled even if their age, education, and experience were taken into account." Bowen, 482 U.S. at 153.

The ALJ found that plaintiff had severe impairments consisting of degenerative disc disease of the lumbar and cervical spine with pain. [AR 25-26]. The ALJ determined that plaintiff had medically-determinable impairments of COPD, a history of carpal tunnel release surgery, a remote history of polysubstance dependence in long-term remission, depression, and anxiety, but that those impairments were not severe. [AR 26].

Plaintiff contends that the ALJ erred in finding plaintiff's anxiety and depression non-severe, and specifically that the ALJ erred in relying on the opinions of the non-examining state agency physicians. [JS 14-21].

Plaintiff received mental health treatment consisting of assessments, brief supportive psychotherapy, and psychotropic medication from Ventura County Behavioral Health roughly every one to three months from August 2009 through June 2013. [See AR 323-358, 385-392, 432-477[1]]. Plaintiff's treatment records show that she had abnormal mental status findings and diagnoses of major depression, recurrent, of "moderate" to "severe" intensity with abnormal mental status findings beginning in August 2009. Plaintiff also was diagnosed with dysthymic disorder and opioid dependence for pain management. [See AR 432-477]. Plaintiff told her treating source that she had a history of depression since the age of fourteen, when she had moved with her single mother away from most of her siblings. She reported a history of substance abuse until around age 36, when she became sober. She said that sobriety had exacerbated her depression and anxiety. [AR 333]. In September 2009, plaintiff told her treating source that she had stopped working

---

[1] Some of the cited records are duplicates.

as a paid care-giver in March 2009 because "she was becoming too sedated because of her pain medications . . . and her doctor put her on [state] disability because of the pain and her depression." [AR 333]. Plaintiff also said that she had "been a good worker" and had "loved [her] work and was proud of it." [AR 334]. Her mental status findings included a sad, tearful affect, depressed mood, rapid thought process, and low self esteem. [AR 337]. She said that she wished she were dead and felt hopeless. She also reported weight gain, sleep disturbance, and feeling anxious. [AR 333-334, 338]. Her depression was noted to be "heavily influenced by chronic pain and various medical problems." [AR 330-331]. She was prescribed Abilify (aripiprazole)[2], 15 mg daily, Prozac (fluoxetine)[3], 20 mg initially then increased to 40 mg daily, Ativan (a brand name for lorazepam[4]), 1 mg as needed, and trazodone[5] for sleep. [See AR 435-437].

In a January 2011 "Client Assessment Update," plaintiff's treating psychiatrist, Dr. Groot, wrote that plaintiff had made "minimal progress over the past year," exhibited "severe depressive symptoms" and

---

[2] Aripiprazole is used to treat the symptoms of schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions) in adults and teenagers 13 years of age and older. It is also used alone or with other medications to treat episodes of mania or mixed episodes (symptoms of mania and depression that happen together) in adults, teenagers, and children 10 years of age and older with bipolar disorder (manic-depressive disorder; a disease that causes episodes of depression, episodes of mania, and other abnormal moods). Aripiprazole is also used with an antidepressant to treat depression when symptoms cannot be controlled by the antidepressant alone.

U.S. Nat'l Library of Med. & Nat'l Inst. of Health, MedlinePlus website, Aripiprazole, *available at* https://medlineplus.gov/druginfo/meds/a603012.html (last visited Oct. 7, 2017).

[3] Fluoxetine (Prozac) is used to treat depression and other psychiatric conditions. See U.S. Nat'l Library of Med. & Nat'l Inst. of Health, MedlinePlus website, Fluoxetine *available at* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a689006.html (last visited Oct. 7, 2017).

[4] Lorazepam is used to relieve anxiety. See U.S. Nat'l Library of Med., MedlinePlus website, Lorazepam, *available at* https://medlineplus.gov/druginfo/meds/a682053.html#why (last visited Oct. 7, 2017).

[5] Trazodone is used to treat depression and is also sometimes used to treat insomnia and schizphrenia. U.S. Nat'l Library of Med. and Nat'l Inst. of Health, MedlinePlus website, *available at* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681038.html#why (last visited Oct. 7, 2017).

4

abnormal mental status findings. Her diagnoses of major depressive order, recurrent, severe; opioid dependence; and personality disorder NOS were unchanged. [AR 476-477]. Plaintiff's treatment plan included medication management, nursing, case management, and rehabilitation groups. [AR 477].

Beginning in March 2011, about a year and a half after her initial assessment, plaintiff's diagnosis was changed to major depressive disorder, recurrent, "in partial remission" and remained so until October 2012, when her diagnosis was changed to major depressive disorder, recurrent, "mild." That diagnosis remained unchanged through her last visit with Dr. Groot in June 2013. [AR 340-350, 385-392, 442-450]. Plaintiff continued to exhibit a depressed or "somber" mood, psychomotor retardation, and impaired cognitive ability due to being mildly under the influence of her prescribed opioids. She also was diagnosed with opioid dependence and personality disorder not otherwise specified ("NOS"). [See AR 340-350, 330-332, 440-450]. Although plaintiff's major depressive disorder was diagnosed as "mild" between October 2012 and June 2013, her treating psychiatrist noted a worsening of her depressive symptoms due to issues related to her paraplegic twin brother moving in with her and to housing problems. [AR 387-392, 467-468].

In Dr. Groot's January 2011 and June 2013 treatment reports, he checked boxes stating that plaintiff exhibited a "[s]ignificant impairment in an important area of life functioning" and a "[p]robablility of deterioriation in an important area of life functioning." [AR 468]. Dr. Groot also opined that without treatment, it was unlikely that plaintiff would be unable to maintain living arrangements, vocational activities, social relationships, and activities of daily living. [AR 468].

During the hearing, plaintiff testified that she was "chronically depressed" and was taking Wellbutrin[6] and lorazepam. She said that she was then living in Littlerock, California, and was seeing a psychiatrist, Dr. Sandoval, who provided therapy and prescribed medication. Plaintiff testified that had only been able to see Dr. Sandoval twice because her office was in Lancaster, California, at a distance from plaintiff's home in Littlerock, and plaintiff did not have a car or gas money. [AR 45-46]. Plaintiff said due a combination of depression and back pain, she felt helpless, worthless, had no energy, and spent a lot of the day lying down. [AR 49, 51-52].

---

[6] Wellbutrin (a brand name for the generic drug bupropion) "is used to treat depression." U.S. Nat'l Library of Med. & Nat'l Inst. of Health, MedlinePlus website, Buproprion,, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695033.html (last visited Oct. 7, 2017).

5

The ALJ characterized the record as containing "a few notations regarding depression"; she did not acknowledge plaintiff's consistent, long-standing diagnoses of recurrent major depression nor discuss notations in the treating source reports indicating that plaintiff was significantly limited in her daily activities or vocational functioning. [AR 26]. The ALJ concluded that plaintiff had "no consistent treatment" for depression notwithstanding plaintiff's treatment reports documenting regular psychiatric visits at Ventura County Behavioral Health with ongoing treatment in the form of a combination of prescribed psychotropic medications lasting more than four years. [See AR 26, 323-358, 385-392, 432-477]. The ALJ noted that plaintiff's mood was "stable" in August 2012 without acknowledging treatment reports from the relevant period documenting her depressed mood and other symptoms of depression and anxiety. See Garrison v. Colvin, 759 F.3d 995, 1017-1018 (9th Cir. 2014) ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms.") (footnote omitted) (citing Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1200–1201 (9th Cir. 2008) ("Nor are the references in [a doctor's] notes that Ryan's anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions, or [another doctor's] more detailed report."). The ALJ also wrote that plaintiff said that she had seen Dr. Sandoval "only once" when plaintiff testified that she had seen Dr. Sandoval twice, and that she had been unable to see Dr. Sandoval more frequently because she did not have a car or gas money, but that a friend had offered to take her for monthly visits in the future. [AR 46]. Therefore, the ALJ made a factual mistake, and she also failed to acknowledge that plaintiff's uncontroverted testimony established that she had a good reason for not having seen Dr. Sandoval more than twice at that point. See Carmickle v. Comm'r, Soc. Sec. Admin. 533 F.3d 1155, 1162 (9th Cir. 2008) (noting that "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive

treatment").

The ALJ concluded that plaintiff's daily activities of "caring for her grandchildren, occasionally cooking, performing household chores, and traveling out of the country for vacation" revealed someone "who is not constantly experiencing pain or depression" [AR 32], but "constant" symptoms are not required to demonstrate a severe impairment or combination of impairments. Moreover, plaintiff testified that she cared for her grandchildren for only five or six months before her daughter moved away, and that she did so because her daughter lived with her and had no money for a babysitter. [AR 43]. Treatment reports indicate that plaintiff took a trip to Puerto Rico to visit her sisters in April 2012 as a birthday gift from her son. [AR 442-443]. She had been receiving mental health treatment for almost three years at that point; taking a trip is not probative of her prior mental condition or necessarily inconsistent with the existence of a severe impairment. See, e.g. Watkins v. Astrue, 884 F. Supp. 2d 1135, 1144 (D. Or. 2012) (holding that in light of the medical evidence as a whole, evidence that the claimant took a single trip to visit a friend was insufficient to establish that the claimant was malingering or to that her testimony was not credible regarding her inability to engage in substantial gainful activity on a continuing basis because of her mental impairments").

The ALJ said that she "fully credit[ed]" the January 2013 and June 2013 state agency psychiatrists' opinions in finding plaintiff's impairments non-severe. [See AR 27, 66, 84]. She did not mention the treating source opinion indicating that plaintiff had a significant functional impairment. She did not attempt to clarify, or further develop, the record regarding that opinion, nor did she obtain a consultative psychiatric opinion. Instead, she relied exclusively on the conflicting non-examining source opinions. See Trevizo v. Berryhill, — F.3d —, 2017 WL 4053751, at *7 (9th Cir. Sept. 14, 2017) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."); Morgan, 169 F.3d at 602 (stating that the opinion of a non-examining physician, standing alone, cannot constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician).

The severity inquiry is "a de minimis screening device to dispose of groundless claims," and the absence of a severe impairment or combination of impairments must be "clearly established by medical evidence." Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290, and SSR 85-28). In light of the

medical evidence as a whole, the record in this case did not "clearly establish" the absence of a severe mental impairment or combination of impairments. Therefore, the ALJ erred in finding that plaintiff had no severe mental impairment or combination of impairments.

An ALJ's error in a social security case is harmless if it is "inconsequential to the ultimate nondisability determination . . . . Where the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether re-consideration is necessary. By contrast, where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate." Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (internal citation and quotation marks omitted). The ALJ's error was not inconsequential to the ALJ's ultimate disability determination because the ALJ's RFC finding at step four included no mental functional limitations, and because it is not clear that plaintiff could have performed her past relevant work if the ALJ had properly assessed the severity of her mental impairments at step two.

**Remedy**

A district court may "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing[.]" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). A remand for further administrative proceedings is the proper remedy in this case because the ALJ's error at step two means that "all essential factual issues" have been not been resolved. Treichler, 775 F.3d at 1101; cf. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (holding that where the ALJ failed to consider or find the claimant's bursitis severe at step two, any error was harmless because the ALJ "extensively discussed" that impairment at step four, and the ALJ's "decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

On remand, the Commissioner shall direct the ALJ to offer plaintiff the opportunity for a new hearing, take appropriate steps to develop the record, reevaluate the medical evidence of record and plaintiff's subjective testimony, and issue a new hearing decision containing properly supported findings.[7]

///

---

[7] This disposition makes it unnecessary to separately consider plaintiff's remaining contentions.

8

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed,** and this case is **remanded to the Commissioner for further administrative proceedings consistent with this memorandum of decision.**

**IT IS SO ORDERED.**

October 10, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge